**RECORD NO. 13-7824**

IN THE

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**SHERMAINE ALI JOHNSON,**
*Petitioner-Appellant,*

**v.**

**HENRY PONTON, WARDEN,**
*Respondent-Appellee.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA,
RICHMOND DIVISION**

**APPELLEE'S RESPONSE BRIEF**

**MARK R. HERRING**
**Attorney General of Virginia**

**ALICE T. ARMSTRONG**
**Senior Assistant Attorney General**

**OFFICE OF THE ATTORNEY GENERAL**
**900 East Main Street**
**Richmond, Virginia 23219**
**(804) 786-2071**
**(804) 371-0151 (fax)**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION ...................................................... 1

STATEMENT OF THE ISSUES ........................................................... 1

STATEMENT OF THE CASE ............................................................... 1

    *The State Court Proceedings* ....................................................... 1

    *The Federal Habeas Corpus Proceedings* ................................... 5

STANDARD OF REVIEW ................................................................... 7

SUMMARY OF THE ARGUMENT ...................................................... 7

ARGUMENT ........................................................................................ 8

I.    THE CASE IS NOT JUSTICIABLE BECAUSE
    JOHNSON'S STATUS AS A RECIDIVIST PREVENTS
    HIM FROM OBTAINING PAROLE AS A MATTER
    OF VIRGINIA LAW ................................................................... 8

II.   *MILLER V. ALABAMA* ANNOUNCED A NEW
    PROCEDURAL RULE THAT DOES NOT APPLY
    RETROACTIVELY TO CASES THAT ARE FINAL
    ON DIRECT REVIEW .............................................................. 17

       A.   *The Supreme Court did not "Make"* Miller
          *Retroactively Applicable to Cases Already Final*
          *on Direct Review* .............................................................. 17

       B.   *The* Teague *Doctrine Bars Retroactive Application*
          *of* Miller .......................................................................... 23

i

1.    Miller *is not substantive because it does not categorically bar a particular sentence* ...................... 26

2.    *The procedural rule in* Miller *is not a "watershed" rule* .......................................... 32

III.   JOHNSON'S SENTENCE IS PROPORTIONATE TO HIS OFFENSES ......................................... 34

CONCLUSION ...................................................... 37

REQUEST FOR ORAL ARGUMENT .................................... 38

CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATION PURSUANT TO RULE 32(A) .................... 39

CERTIFICATE OF SERVICE ............................................ 40

# TABLE OF AUTHORITIES

Page

<u>Cases</u>

*Allen v. Wright*, 468 U.S. 737 (1984) .......................................................... 9

*Alleyne v. United States*, 133 S. Ct. 2151 (2013) ......................... 20, 29, 30

*Atkins v. Virginia*, 536 U.S. 304 (2002) ....................................... 27, 28, 34

*Beard v. Banks*, 542 U.S. 406 (2004) .................................... 25, 26, 32, 33

*Bell v. Uribe*, 729 F.3d 1052 (9th Cir. 2013).......................................... 25

*Bender v. Williamsport Area School Dist.*, 475 U.S. 534 (1986).............. 8

*Bennett v. United States*, 119 F.3d 468 (7th Cir. 1997)..................... 22, 23

*Cage v. Louisiana*, 498 U.S. 39 (1990) .............................................. 18, 19

*Chaidez v. United States*, 133 S. Ct. 1103 (2013) ............................. 21, 23

*Chambers v. State*, 831 N.W.2d 311 (Minn. 2013) ........................... 25, 31

*Cheeks v. Gaetz*, 571 F.3d 60 (7th Cir. 2009) ......................................... 16

*Clapper v. Amnesty International USA,* 133 S. Ct. 1138 (2013)............ 8, 9

*Craig v. Cain*, 2013 U.S. App. LEXIS 431
  (5th Cir. 2013).................................................................... 20, 25, 31, 33

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006) ........................... 11

*Danforth v. Minnesota*, 552 U.S. 264 (2008) .................................... 20, 24

*DeStefano v. Woods*, 398 U.S. 631 (1968) (*per curiam*)......................... 34

iii

*Duncan v. Louisiana*, 391 U.S. 145 (1968) .............................................. 34

*Geter v. State*, 2012 Fla. App. LEXIS 1601 (Fla. App. 2012) ................ 26

*Gideon v. Wainwright*, 372 U.S. 335 (1963) ........................................... 33

*Graham v. Collins*, 506 U.S. 461 (1993) .................................................. 27

*Graham v. Florida*, 560 U.S. 48 (2010) ................................. 15, 27, 28, 34

*Harris v. Commonwealth*, 688 S.E.2d 279 (Va. 2010) ............................. 36

*Herb v. Pitcairn*, 324 U.S. 117 (1945) .................................................... 11

*Howard v. United States*, 374 F.3d 1068 (11th Cir. 2004) ...................... 33

*In re Morgan*, 713 F.3d 1365, *reh'g en banc denied*,
  717 F.3d 1186 (11th Cir. 2013) ....................................................... *passim*

*In re Payne*, 733 F.3d 1027 (10th Cir. 2013) .......................................... 30

*In re Pendleton*, 732 F.3d 280 (3d Cir. 2013) ......................................... 23

*In Re Williams*, 330 F.3d 277 (4th Cir. 2003) ........................................ 22

*Johnson v. Burnley*, 887 F.2d 471 (4th Cir. 1989) .................................... 8

*Johnson v. Commonwealth*, 529 S.E.2d 769 (Va. 2000) ...................... 3, 12

*Johnson v. Commonwealth*, 591 S.E.2d 47 (Va. 2004) ...... 4, 11, 35, 36, 37

*Johnson v. Director*, Record No. 010031 ................................................... 3

*Johnson v. United States*, 720 F.3d 720 (8th Cir. 2013) .......................... 23

*Johnson v. Virginia*, 531 U.S. 981 (2000) ................................................. 3

*Kan. Judicial Review v. Stout*, 562 F.3d 1240 (10th Cir. 2009).............. 10

*Kha v. Gipson*, 2013 U.S. Dist. LEXIS 95943 (C.D. Cal. 2013) ............. 25

iv

*Lane v. Williams*, 455 U.S. 624 (1982)..................................................... 10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ................................. 9

*Martin v. Symmes*, 2013 U.S. Dist. LEXIS 147965
 (D Minn. 2013) ..................................................................................... 25

*Miller v. Alabama*, 132 S. Ct. 2455 (2012) ...................................... *passim*

*Moore v. Hinkle*, 527 S.E.2d 419 (Va. 2000) ........................................... 36

*Moss v. Spartanburg County Sch. Dist. Seven*, 683 F.3d 599
 (4th Cir. 2012)......................................................................................... 9

*North Carolina v. Rice*, 404 U.S. 244 (1971) (*per curiam*) ................ 9, 13

*O'Dell v. Netherland*, 521 U.S. 151 (1997).................................. 25, 26, 32

*Padilla v. Kentucky*, 130 S. Ct. 1473 (2010) ...................................... 21, 22

*Penry v. Lynaugh*, 492 U.S. 302 (1989) ................................. 26, 29, 32, 34

*People v. Carp*, 828 N.W.2d 685 (Mich. App. 2012) ............................. 26

*Ring v. Arizona*, 536 U.S. 584 (2002)....................................................... 30

*Roper v. Simmons*, 543 U.S. 551 (2005).................................... 4, 5, 27, 28

*Rouse v. Lee*, 339 F.3d 238 (4th Cir. 2003)................................................ 7

*Schiro v. Farley*, 510 U.S. 222 (1994)...................................................... 20

*Schiro v. Summerlin*, 542 U.S. 348 (2004)...................... 24, 25, 27, 30, 33

*Simmons v. South Carolina*, 512 U.S. 154 (1994)...................................... 4

*Simpson v. United States*, 721 F.3d 875 (7th Cir. 2013) ......................... 30

*Spencer v. Kemna*, 523 U.S. 1 (1998)...................................................... 10

*State v. Tate*, 2013 La. LEXIS 2376 (La. 201) .................................... 25, 31

*Sullivan v. Louisiana*, 508 U.S. 275 (1993) ................................................ 18

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) ........................... 9

*Teague v. Lane*, 489 U.S. 288 (1989) .................................................. *passim*

*Tyler v. Cain*, 533 U.S. 656 (2001) ................................... 17, 18, 19, 22, 23

*United States v. Mathur*, 685 F.3d 36 (4th Cir. 2012) ...... 17, 22, 23, 32, 33

*United States v. Maldonado*, 2012 U.S. Dist. LEXIS 166589
  (S.D. N.Y. 2012) ...................................................................................... 31

*United States v. Redd*, 735 F.3d 88 (2d Cir. 2013) ................................... 30

*United States v. Stewart*, 2013 U.S. App. LEXIS 19810
  (4th Cir. 2013) ........................................................................... 20, 23, 30

*Vanetzian v. Hall*, 562 F.2d 88 (1st Cir. 1977) .................................. 14, 17

*Vines v. Muncy*, 553 F.2d 342 (4th Cir. 1977) ......................................... 36

*Wallace v. Jarvis*, 423 Fed. Appx. 328 (4th Cir. 2011) ........................... 10

*Ware v. King*, 2013 U.S. Dist. LEXIS 126782, *approved by*,
  2013 U.S. Dist. LEXIS 126781 (S.D. Miss. 2013) ................................. 25

*Whorton v. Bockting*, 549 U.S. 406 (2007) ........................... 25, 32, 33, 34

<u>Statutes</u>

28 U.S.C.:

§ 1291.................................................................................................. 1
§ 2244(b)(2) .............................................................. 16, 18, 22
§ 2244(b)(3)(D)................................................................... 23
§ 2244(b)(4) ........................................................................ 19
§ 2244(d)(1) ........................................................................ 15
§ 2244(d)(1)(A)................................................................... 38
§ 2244(d)(1)(C)................................................... 6, 15, 16
§ 2253................................................................................... 1
§ 2254.............................................................. 1, 10, 16

Code of Virginia:

§ 17.1-313(C) ...................................................................... 4
§ 19.2-303 ......................................................................... 36
§ 53.1-151(B1)............................................................ *passim*
§ 53.1-151(D)............................................................. 12, 15
§ 53.1-165.1 ................................................................. 12

**STATEMENT OF JURISDICTION**

Shermaine Ali Johnson filed a petition for writ of habeas corpus in the district court pursuant to 28 U.S.C. § 2254. United States District Court Judge James Spencer denied habeas relief on October 16, 2013, and issued a Certificate of Appealability on October 21, 2013. Johnson filed his Notice of Appeal on November 7, 2013. This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253.

**STATEMENT OF THE ISSUES**

I.   CAN A SERIAL RAPIST WHO WILL REMAIN PAROLE INELIGIBLE AS A MATTER OF STATE LAW IRRESPECTIVE OF THE COURT'S RESOLUTION OF HIS § 2254 CLAIM INVOKE THE COURT'S JURISDICTION TO ISSUE AN ADVISORY OPINION?

II.  DOES THE CONCEDEDLY NEW RULE ANNOUNCED IN *MILLER V. ALABAMA* APPLY RETROACTIVELY TO UPSET A STATE SENTENCE IMPOSED USING CONSTITUTIONALLY SOUND PROCEDURES WHEN IT BECAME FINAL IN 2005?

**STATEMENT OF THE CASE**

***The State Court Proceedings.***

A jury convicted Johnson of the rape and capital murder of Hope Hall in the Circuit Court for the City of Petersburg, Virginia (trial court) on July

1

24, 1998.  (App. 68-70).  On direct review, the Supreme Court of Virginia found:

> On July 11, 1994, the nude body of 22-year-old Hope Denise Hall was found on the bedroom floor of her apartment in Petersburg.  She had been stabbed 15 times, including fatal stab wounds to her back, chest, and neck.
>
> Hall's body had abrasions on the nose and left cheek.  The body also had a broken, ragged fingernail that Dr. Deborah Kay, an assistant chief medical examiner for the Commonwealth, testified was a "defense-type" injury.  Dr. Kay also testified that death "is not generally immediate" with wounds such as those suffered by Hall, and that she initially would have remained conscious after the wounds were inflicted.
>
> The police found blood on two "steak" knives, which were lying on a counter in Hall's kitchen.  Blood was also found on a piece of a broken drinking glass located on the kitchen counter, and there was additional blood on the kitchen counter and floor.  The police recovered from the kitchen floor an earring, five strands of hair, and a partial shoe print containing some blood.  The matching earring was found in Hall's bedroom.
>
> The outside door to Hall's apartment was locked, and the police found a partial fingerprint and smears of blood on the inside panel of that door, which was located near the kitchen.  The police recovered two additional "steak" knives, one on Hall's bed and one in her bathroom.  The telephone wires in her bedroom had been pulled out of the wall.
>
> A smear of blood and blood splatters were located on the bedroom wall near the victim's body.  The police found additional blood on the bedroom floor, dresser, sheets, and bedspread.  There was no sign of forced entry into the apartment.

2

*Johnson v. Commonwealth*, 529 S.E.2d 769, 773-74 (Va. 2000). Johnson was linked to the rape and murder through subsequent DNA analysis of blood from the knife found in the victim's bathroom, blood on the broken glass from the kitchen, and semen found on the victim's sheets and bedspread. *Id*. at 774-75.

After a separate sentencing hearing, the jury sentenced Johnson to death for the capital murder and life for the rape. (App. 68-73). On appeal, the Supreme Court of Virginia affirmed Johnson's convictions and sentences. *Johnson*, 529 S.E.2d at 786-87. The Supreme Court of the United States denied Johnson's certiorari petition on November 6, 2000. *Johnson v. Virginia*, 531 U.S. 981 (2000).

Johnson then filed a petition for a writ of habeas corpus in the Supreme Court of Virginia. On September 21, 2001, the Supreme Court of Virginia granted the writ in part and dismissed it in part. *Johnson v. Director*, Record No. 010031. (App. 74-81). The Supreme Court of Virginia dismissed all of Johnson's claims challenging the validity of his convictions for capital murder and rape and all but one of his claims challenging the validity of his sentences. *Id.*

However, it granted relief on Johnson's claim that trial counsel had been ineffective for failing to request an instruction informing the jury that

he would be parole ineligible if sentenced to life imprisonment.[1]  (App. 80-81).    Therefore,  the  case  was  remanded  to  the  trial  court  for  a  new sentencing proceeding solely on the capital murder conviction.  (App. 80). Johnson's petition for rehearing was denied on November 2, 2001.

On remand, a second jury also sentenced Johnson to death.  (App. 82-83).  The second sentencing jury found Johnson presented a threat of future dangerousness  and  that  his  crime  was  wantonly  vile.    *Johnson  v. Commonwealth*, 591 S.E.2d 47, 49 (Va. 2004).    The Supreme Court of Virginia affirmed and also conducted a statutorily mandated[2] proportionality review of Johnson's death sentence.  *Johnson*, 591 S.E.2d at 61.  Holding the sentence was not disproportionate, the court found "Johnson's death sentence is neither excessive nor disproportionate to penalties imposed by other sentencing bodies in this Commonwealth, considering both the crime and the defendant."  *Id*.

Johnson  subsequently  sought  certiorari,  challenging  his  death sentence.  While his petition was pending, the Supreme Court of the United States rendered its decision in *Roper v. Simmons*, 543 U.S. 551 (2005), and remanded  Johnson's  case  to  the  Supreme  Court  of  Virginia  for

---

[1] *See Simmons v. South Carolina*, 512 U.S. 154 (1994).

[2] *See* Va. Code §17.1-313(C).

4

reconsideration in light of *Roper*. Upon reconsideration, Johnson's sentence was commuted "to imprisonment for life" by order of June 9, 2005. (App. 42). Johnson sought no further relief.

### The Federal Habeas Corpus Proceedings.

On June 24, 2013, Johnson filed a petition for a writ of habeas corpus in the district court. Relying on the decision in *Miller v. Alabama*, 132 S. Ct. 2455 (2012), Johnson challenged the life sentence imposed in 2005 for the capital murder conviction.[3] (App. 4-17). Johnson alleged his sentence of "life imprisonment without the possibility of parole" was unconstitutional and that he was entitled to retroactive application of the rule in *Miller*. (App. 4-17).

The Warden timely filed a motion to dismiss the petition, arguing that because *Miller* was not retroactive, the petition was untimely. In addition, the Warden argued Johnson did not present a justiciable controversy because he would remain parole ineligible as a matter of Virginia law, *even if* he were resentenced on the capital murder conviction. Finally, the Warden noted that although the legal landscape had changed following *Roper*, Johnson had, in fact, had an individualized sentencing proceeding in which

---

[3] Johnson did not challenge the underlying capital murder conviction or the rape conviction, for which he also was sentenced to life imprisonment. (App. 4-17, 71-73).

he presented mitigating evidence, which the jury and trial court considered in determining his sentence.

It was uncontested below that Johnson's sentence became final on September 7, 2005 and *Miller* announced a "new rule" as that term is applied in *Teague v. Lane*, 489 U.S. 288 (1989). Thus, the only remaining *Teague* question for the district court was whether *Miller* could be applied retroactively in federal habeas corpus.

Following argument, the district court granted the Warden's motion to dismiss, holding that *Miller* is not retroactive. (App. 84-93). The district court first concluded *Miller* announced a procedural rule, relying on the express language of *Miller* and the absence of a categorical ban on life without parole sentences for juveniles. (App. 91-92). The district court then concluded *Miller* did not announce a "watershed rule of criminal procedure" because it did not "'alter our understanding of bedrock procedural elements.'" (App. 92-93). Thus, the district court held Johnson's petition was untimely because he could not invoke the provisions of 28 U.S.C. § 2244(d)(1)(C). (App. 93). Accordingly, the district court dismissed Johnson's petition by order of October 15, 2013. (App. 94).

The district court subsequently issued a certificate of appealability, limited to the question "whether the new constitutional rule announced in

*Miller* is retroactively applicable to cases on collateral review." (App. 95-96). This appeal followed.

## STANDARD OF REVIEW

The district court's ruling in this case is subject to *de novo* review by this Court. *Rouse v. Lee*, 339 F.3d 238, 244 (4th Cir. 2003).

## SUMMARY OF THE ARGUMENT

It is unnecessary for the Court to reach the merits of Johnson's claim; indeed, it should not do so because the case presents no justiciable controversy. Johnson's status as a recidivist and his multiple unassailable rape convictions render him ineligible for parole irrespective of the sentence he received for the capital murder of Hope Hall.

Furthermore, the Supreme Court has not made *Miller* retroactive and a state court's reasonable, good faith interpretation and application of existing precedent is unassailable on federal collateral review unless the petitioner satisfies one of two narrow exceptions not met here. The sentence Johnson received, and now challenges, remains constitutionally permissible even after *Miller*. Thus, under *Teague*, Johnson may not avail himself of the new procedural rule in *Miller*.

## ARGUMENT

**I.   THE CASE IS NOT JUSTICIABLE BECAUSE JOHNSON'S STATUS AS A RECIDIVIST PREVENTS HIM FROM OBTAINING PAROLE AS A MATTER OF VIRGINIA LAW**

At the threshold, this Court need not, and should not, address Johnson's claim because he presents no justiciable controversy. Johnson is, and will remain, ineligible for parole without regard to the sentence he seeks to set aside here. Under these circumstances, there is no meaningful relief this Court can fashion because even a favorable disposition will not render Johnson eligible for parole.

"[E]very federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it." *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 541 (1986) (citation and internal quotations omitted); *see also Johnson v. Burnley*, 887 F.2d 471, 474 (4th Cir. 1989) ("A federal appellate court lacks discretion to review the merits until it satisfies itself that the court below had subject matter jurisdiction over the case.").

"To establish Article III standing, an injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty*

8

*International USA*, 133 S. Ct. 1138, 1147 (2013) (citation and internal quotations omitted); *Moss v. Spartanburg County Sch. Dist. Seven*, 683 F.3d 599, 604 (4th Cir. 2012). The petitioner must show the injury complained of is "fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). Along with injury and causation, the "irreduceable constitutional minimum of standing" requires a party seeking relief in federal court to demonstrate that a favorable decision will redress his injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Thus, if relief from the injury is not "likely to follow from a favorable decision," the party seeking relief has no standing and has not presented a justiciable case or controversy. *Allen v. Wright*, 468 U.S. 737, 751 (1984) (citation and internal quotation omitted). Allegations of possible future injury are insufficient. *Clapper*, 133 S. Ct. at 1147.

Whether the Article III infirmity presented here sounds in standing or in mootness, it is clear Johnson has failed to present a claim for which there can be any meaningful redress. "[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them." *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (*per curiam*). "In deciding whether a case is moot, [t]he crucial question is whether granting a

present determination of the issues offered . . . will have some effect in the real world." *Kan. Judicial Review v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009) (citation and internal quotations omitted) (alteration in original). "When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot." *Id.  See also Spencer v. Kemna*, 523 U.S. 1, 18 (1998) (dismissing as moot a habeas corpus challenge to parole revocation when the parole sentence had expired); *Lane v. Williams*, 455 U.S. 624, 631 (1982) ("Since respondents elected only to attack their sentences, and since those sentences expired during the course of these proceedings, this case is moot."); *Wallace v. Jarvis*, 423 Fed. Appx. 328 (4th Cir. 2011) (dismissing as moot appeal of § 2254 application that challenged the calculation of petitioner's release date, where petitioner had been released from custody).

Johnson is parole ineligible as a matter of Virginia law without reference to the sentence imposed for the capital murder conviction.  *See* Va. Code § 53.1-151(B1) (persons convicted of three or more separate felony offenses of murder, rape or robbery using a firearm or other deadly weapon that "were not part of a common act, transaction or scheme shall not be eligible for parole").  The Court does not have jurisdiction to consider Johnson's claim because even a favorable determination cannot affect his

eligibility for parole. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("The doctrines of mootness, ripeness, and political question all originate in Article III's 'case' or 'controversy' language, no less than standing does."). *See also Herb v. Pitcairn*, 324 U.S. 117, 126 (1945) (noting federal courts "are not permitted" to render advisory opinions, particularly when reviewing state court judgments that ultimately will be unaffected by resolution of the federal claim).

When the Supreme Court of Virginia commuted Johnson's death sentence, he already had multiple convictions for rape and other serious felonies.[4]  (App. 42, 45-61).  Indeed, Johnson received state habeas corpus relief on his original death sentence *because* his counsel had failed to request an instruction informing the jury he would be parole ineligible if he were sentenced to life in prison.  591 S.E.2d at 49; (App. 79-80).  Johnson was (and remains) parole ineligible not as a result of the capital murder conviction or the commuted sentence of "imprisonment for life," but because of his status as a serial rapist.  Johnson conceded below he is parole ineligible under Virginia Code § 53.1-151(B1).  (App. 26).  What is more, Johnson relied upon that status in securing state habeas corpus relief.

---

[4] For purposes of Virginia Code § 53.1-151(B1), the predicate rape offenses are the two rapes from Southampton County and the rape of Hall.

Johnson had been sentenced to a total of 120 years' imprisonment in the Circuit Court of Southampton County, Virginia in 1995 for convictions of two, unrelated counts of rape; abduction; and breaking and entering with intent to commit rape. (App. 46-61). Also, upon his guilty plea, the Supreme Court of New York County, New York had sentenced Johnson to a concurrent term of 3 to 9 years' imprisonment in 1996 for first degree rape. (App. 45).[5] In addition to those prior offenses, Johnson was convicted of rape and sentenced to life imprisonment for that crime at the capital murder trial giving rise to the sentence he challenges here. (App. 68-73).

All of these offenses, committed in 1994, occurred before the abolition of parole in Virginia. *See* Va. Code § 53.1-165.1 (limiting parole for felony offenses that occurred on or after January 1, 1995, when a term of incarceration was imposed). Therefore, under applicable law, Johnson would be eligible for parole—even on the capital murder conviction—but for his status as a recidivist. *Compare* Va. Code § 53.1-151(D) (establishing parole eligibility for those sentenced to two or more life sentences, including for capital murder, after serving 30 years' confinement *provided* the individual was not otherwise ineligible for parole) *with* Va. Code § 53.1-151(B1)

---

[5] "During the penalty phase of the trial, the Commonwealth presented evidence that in addition to the rapes of Scott, Chambliss, and Hall, Johnson committed two other rapes in 1994. The two victims of these other crimes testified at the penalty phase." *Johnson*, 529 S.E.2d at 776.

(mandating that "any person convicted of three separate offenses of . . . (ii) rape . . . when such offenses were not part of a common act, transaction or scheme shall not be eligible for parole"). In other words, it is Johnson's status as a recidivist and serial rapist, rather than his sentence for capital murder, that renders him parole ineligible as a matter of state law. *Id.*

The district court rejected the Warden's justicability challenge, finding that although its "determination of the merits of Johnson's petition may ultimately have no effect on his imprisonment, it will have an effect on the legal status of Johnson's *conviction* for murder, if only to determine whether he is constitutionally entitled to resentencing. As such, Johnson's claim does not present a moot question." (App. 87-88) (emphasis added; footnotes omitted). This analysis is flawed.

Johnson challenged neither the underlying capital murder conviction itself nor the multiple predicate rape offenses that render him parole ineligible. Va. Code § 53.1-151(B1). Rather, in proper recognition of *Miller*'s scope, Johnson challenged only the capital murder sentence. (App. 17, 39). In this context, no decision the district could render would have any effect at all on his capital murder *conviction*—the most Johnson ever sought was relief from his *sentence* on the capital murder conviction. *Cf. Rice*, 404 U.S. at 248 (vacating grant of federal habeas corpus relief and remanding for consideration

13

of mootness where only cognizable challenge was to a sentence that had been served); *see also Vanetzian v. Hall*, 562 F.2d 88, 90 (1st Cir. 1977) (noting the petitioner challenged only his sentence and denying a certificate of probable cause because the validity of a longer, concurrent sentence was not in question).

Furthermore, the only reason for challenging the sentence was in the hope that he *might* be granted an opportunity to seek parole at some later date, as the prayer for relief plainly acknowledged. (App. 17, 39) (Johnson prayed that the district court "vacate the sentence of life imprisonment without parole for homicide and remand the case for resentencing"). But, even if Virginia resentenced Johnson as he requested and the resulting sentence were 1 day, he would *still* remain parole ineligible because of the unchallenged predicate convictions. Va. Code § 53.1-151(B1). Therefore, the injury complained of (parole ineligibility) is not "fairly traceable" to the capital murder sentence Johnson challenges and granting relief on the *Miller* claim will not "redress" the alleged injury. Thus, Johnson does not have standing to press his claim because he cannot demonstrate he has met the "irreduceable constitutional minimum" to invoke the Court's jurisdiction.

Equally flawed is the district court's rationale that Johnson's claim was not moot because a favorable resolution might permit him to assert a

challenge, under *Graham v. Florida*, 560 U.S. 48 (2010), to the life sentence imposed for the rape of Hope Hall. (App. 87 at n.2). The time for asserting such a claim expired long ago, on May 7, 2011.[6] *See* 28 U.S.C. § 2244(d)(1)(C). Indeed, because Johnson did not assert a *Graham* claim in the present petition, any future claim would be untimely under § 2244(d)(1) even if the Court accepted Johnson's dubious premise that, under the facts of his case, such a challenge was not possible before *Miller*. *See id.* Johnson has identified no authority for the proposition that he may use a defaulted claim to animate a non-justiciable claim.

More fundamentally, the district court misapprehended the nature of the Warden's argument. The lack of redressability arises not simply because Johnson failed to challenge his life sentence for rape, but because even a successful challenge would not alter Johnson's eligibility for parole. Johnson *would be* eligible for parole for both the rape and capital murder of Hope Hall, if those were his only convictions. Va. Code § 53.1-151(D). But they were not. Neither Johnson nor the district court ever addressed the effect of the two

---

[6] It is also questionable whether Johnson could assert a cognizable challenge to his life sentence for the rape of Hall, even if the claim were timely. *Graham* expressly avoided reaching the situation presented here—where a homicide and non-homicide offense were committed in the same criminal transaction. 560 U.S. at 63 (limiting the holding to "only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense.").

predicate rape offenses, or the aggregate sentences he received of 120 years' imprisonment for those (and related) offenses, the validity of which have not been challenged. *Cf. Cheeks v. Gaetz*, 571 F.3d 680, 690 (7th Cir. 2009) (applying concurrent sentence doctrine to summarily affirm dismissal of a § 2254 petition where an unchallenged conviction provided an independent basis for the confinement).

The district court also relied on the possibility of further developments in the law addressing sentencing of minors. (App. 87). Not only is that justification entirely speculative, it ignores the simple truth that any change that actually has retroactive effect would present a fresh opportunity for Johnson to seek relief. *See* 28 U.S.C. §2244(b)(2) and (d)(1)(C).[7]

Johnson does not question the constitutionality of Virginia Code § 53.1-151(B1); it will continue to apply to him irrespective of whether the Court grants habeas corpus relief on his *Miller* claim. That statute operates by reference to the number and nature of the *convictions* suffered, not to the sentences imposed. *See id.* Under these circumstances, there simply is no relief this Court can grant that would render Johnson parole eligible. As parole eligibility was the ultimate goal, the claim itself does not present a justiciable

---

[7] Of course, if the Virginia General Assembly later repeals the parole ineligibility statute, or circumscribes its application to those who committed their offenses as juveniles, Johnson would then be parole eligible without resort to the federal courts.

controversy for which there is any viable redress. *Cf. Vanetzian*, 562 F.2d at 91 ("resist[ing] the invitation to address substantive and procedural issues, the resolution of which would have no practical effect on petitioner.").

Accordingly, this Court should dismiss the petition for want of redressability because even if the *Miller* rule were retroactive, applying it here would amount to rendering an advisory opinion.

## II. *MILLER V. ALABAMA* ANNOUNCED A NEW PROCEDURAL RULE THAT DOES NOT APPLY RETROACTIVELY TO CASES THAT ARE FINAL ON DIRECT REVIEW.

Even if his appeal were justiciable, Johnson would not be entitled to federal habeas corpus relief because his claim rests on a new procedural rule announced in *Miller* that does not apply retroactively. The Supreme Court did not hold *Miller* was retroactive to cases on collateral review, and direct review of Johnson's sentence had concluded long before *Miller* was decided. Accordingly, the district court properly dismissed Johnson's petition as untimely.

### A. *The Supreme Court did not "Make"* Miller *Retroactively Applicable to Cases Already Final on Direct Review*

"[A] new rule is not 'made retroactive' unless the Supreme Court *holds* it to be retroactive." *Tyler v. Cain*, 533 U.S. 656, 663 (2001) (emphasis added); *see also United States v. Mathur*, 685 F.3d 396, 401 (4th

Cir. 2012) ("The only way to make a new rule retroactive 'is through a holding,' not through dictum." (quoting *Tyler*, 533 U.S. at 663-64)). *Miller* does not hold that it is retroactive.

Undaunted, Johnson nevertheless insists that because the Supreme Court decided the companion case of *Jackson v. Hobbs* simultaneously with *Miller*, "the Court already has decided that the new rule will apply retroactively." (Pet. Br. at 10). Johnson's argument ignores the Supreme Court's clear direction "that 'made' means 'held' and, thus, the requirement is satisfied *only* if this Court has held that the new rule is retroactively applicable to cases on collateral review." *Tyler*, 533 U.S. at 662 (quoting 28 U.S.C. § 2244(b)(2)) (emphasis added).

In *Tyler*, the Court addressed whether the jury-instruction rule announced in *Cage v. Louisiana*, 498 U.S. 39 (1990), applied retroactively. Tyler argued it must be retroactive because the Court subsequently held that a *Cage*-error was structural. *See Sullivan v. Louisiana*, 508 U.S. 275 (1993). The Supreme Court rejected that argument, explaining that "*Cage* itself does not hold that it is retroactive. The only holding in *Cage* is that the particular jury instruction violated the Due Process Clause." *Tyler*, 533 U.S. at 664-65.

Even in light of the subsequent determination that such a violation amounted to structural error, "[t]he most [Tyler] can claim is that, based on the principles outlined in *Teague*, this Court should make *Cage* retroactive to cases on collateral review. What is clear, however, is that we have not 'made' *Cage* retroactive to cases on collateral review." *Id*. at 666. The Court then declined to make *Cage* retroactive in Tyler's case because under the successive writ bar, "the District Court was required to dismiss it unless Tyler showed that this Court already had made *Cage* retroactive. § 2244(b)(4)." *Id.* at 667.

The same is true here. To use *Tyler*'s words, *Miller* "itself does not hold that it is retroactive." 533 U.S. at 664. The only holding in *Miller* was "that the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." 132 S. Ct. at 2469. Therefore, *Miller* has not been "made" retroactive to cases on collateral review. As in *Tyler*, the best Johnson can say is that the Supreme Court *should* make *Miller* retroactive. "What is clear, however," is that the Supreme Court has not done so. *Tyler*, 533 U.S. at 666. *See also In re Morgan*, 713 F.3d 1365, 1367, *reh'g en banc denied*, 717 F.3d 1186 (11th Cir. 2013) (citing *Tyler* and noting "the Supreme Court has not held that *Miller* is retroactively applicable to cases on collateral review."); *cf. United*

19

*States v. Stewart*, 2013 U.S. App. LEXIS 19810 at *2 n.* (4th Cir. 2013) ("We note that *Alleyne* [*v. United States*, 133 S. Ct. 2151 (2013)] has not been made retroactively applicable to cases on collateral review.").

Johnson's attempt to distinguish *Morgan* and *Craig v. Cain*, 2013 U.S. App. LEXIS 431 (5th Cir. 2013), is unavailing because he fails to address the significant federalism concerns underpinning *Teague*. *Jackson* was decided on certiorari from state court rather than in a federal habeas corpus proceeding. While states are free to also adopt the principles of *Teague*, the rule "was intended to limit the authority of federal courts to overturn state convictions — not to limit a state court's authority to grant relief for violations of new rules of constitutional law when reviewing its own State's convictions." *Danforth v. Minnesota*, 552 U.S. 264, 280-81 (2008).[8]

"The relevant frame of reference, . . . is not the purpose of the new rule whose benefit the [defendant] seeks, but instead the purposes for which the writ of habeas corpus is made available." *Teague*, 489 U.S. at 306. That purpose, within our federal system of government, includes "comity and respect for the finality of state convictions." *Danforth*, 552 U.S. at 279.

---

[8] Furthermore, *Teague* is a prudential, rather than a jurisdictional rule and may be waived if the state fails to raise it. *Schiro v. Farley*, 510 U.S. 222, 228-29 (1994). It does not appear Arkansas raised the argument that relief could not be granted to Jackson in a *state* collateral proceeding.

This Court does not look to the purpose of the new rule; only to the purpose of the federal writ of habeas corpus. *Teague*, 489 U.S. at 306.

The Supreme Court's decision in *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013), guides the analysis here. In *Chaidez*, the petitioner had an active federal collateral proceeding pending when the Supreme Court decided *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). 133 S. Ct. at 1106. The Court recognized that its holding in *Padilla* "vindicated Chaidez's view of the Sixth Amendment: We held that criminal defense attorneys must inform non-citizen clients of the risks of deportation arising from guilty pleas." *Id.* But the Court held nonetheless that Chaidez was *not* entitled to retroactive benefit because the "Court announced a new rule in *Padilla*. Under *Teague*, defendants whose convictions became final prior to *Padilla* therefore cannot benefit from its holding." *Id.* at 1113.

Significantly, *Padilla* was decided in the same procedural posture as *Jackson*: on certiorari from a denial of state habeas corpus review. *Chaidez* held, however, that *Padilla* was not retroactive. 133 S. Ct. at 1113. Johnson claims *Chaidez* is inapposite because it decided only that *Padilla* announced a new rule. Perhaps. But the only reason to inquire whether a rule is "new" or "old" is to decide whether it applies retroactively.

21

Even if Johnson's distinction had merit, moreover, this Court had already held that *Padilla* was not retroactive. *Mathur*, 685 F.3d at 401. *Mathur* explained that *Padilla* made not "a single reference to *Teague* and its progeny, nor to the principles annunciated in those decisions." *Id.* at 401. The Court recognized that § 2244(b)(2) "does not authorize us to read between the lines of a prior opinion to discern whether that opinion, by implication, made a new rule retroactively applicable on collateral review. The only way to make a new rule retroactive "is through a holding, not through dictum." *Id.* (quoting *Tyler*, 533 U.S. at 663-64). *Mathur* is dispositive. Johnson's theory requires this Court to read between the lines of *Miller* and find retroactivity by implication. 685 F.3d at 401. *That* it cannot do.

Johnson similarly misplaces his reliance on successive-*Miller*-petition cases to argue that *Miller* is retroactive. None shows that. Moreover, Johnson ignores the substantially higher hurdle he must clear to prevail on the merits of a retroactivity claim. Authorization to file a successive petition is merely a finding that a petitioner has made "a sufficient showing of possible merit to warrant a fuller exploration by the district court." *In Re Williams*, 330 F.3d 277, 281 (4th Cir. 2003) (quoting *Bennett v. United States*, 119 F.3d 468, 469-70 (7th Cir. 1997)). Such grants are "tentative"

22

and the district court is required to dismiss the petition if it finds that the rule in *Miller* is not retroactive. *See In re Pendleton*, 732 F.3d 280, 282-83 (3d Cir. 2013); *Johnson v. United States*, 720 F.3d 720, 721 (8th Cir. 2013) ("the district court must dismiss the motion that we have allowed the applicant to file, without reaching the merits of the motion, if the court finds that the movant has not satisfied the requirements for the filing of such a motion." (quoting *Bennett*, 119 F.3d at 469-70)) (alterations in original). *See also Tyler*, 533 U.S. at 664 ("The stringent time limit [in § 2244(b)(3)(D)] suggests that the courts of appeals do not have to engage in the difficult legal analysis that can be required to determine questions of retroactivity in the first instance.").

In short, *Miller* itself does not hold that it is retroactive. Accordingly, it has not been "made" retroactive to cases on collateral review. *Tyler*, 533 U.S. at 666; *cf. Mathur*, 685 F.3d at 401; *Stewart*, 2013 U.S. App. LEXIS 19810, at *2 n.*.

### B.    The **Teague** *Doctrine Bars Retroactive Application of* **Miller.**

"Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague*, 489 U.S. at 310; *see also Chaidez*, 133 S. Ct. at 1107 ("When we announce a 'new

rule,' a person whose conviction is already final may not benefit from the decision in a habeas or similar proceeding."); *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004) (new rules apply retroactively "only in limited circumstances.").

The Supreme Court has explained the important federalism considerations underpinning the nonretroactivity doctrine.

> The "costs imposed upon the State[s] by retroactive application of new rules of constitutional law on habeas corpus . . . generally far outweigh the benefits of this application." In many ways the application of new rules to cases on collateral review may be more intrusive than the enjoining of criminal prosecutions, for it continually forces the States to marshal resources in order to keep in prison defendants whose trials and appeals conformed to then-existing constitutional standards. Furthermore, . . . [s]tate courts are understandably frustrated when they faithfully apply existing constitutional law only to have a federal court discover, during a [habeas] proceeding, new constitutional commands."

*Teague*, 489 U.S. at 310 (internal citations and quotations omitted) (alterations in original). In other words, "the *Teague* rule of nonretroactivity was fashioned to achieve the goals of federal habeas while minimizing federal intrusion into state criminal proceedings." *Danforth*, 552 U.S. at 280. Notwithstanding the importance of the right vindicated by the new rule

> it does *not* follow that, when a criminal defendant has had a full trial and one round of appeals in which the State faithfully applied the Constitution as we understood it at the time, he may nevertheless continue to litigate his claims

24

> indefinitely in hopes that we will one day have a change of
> heart.

*Summerlin*, 542 U.S. at 358 (emphasis added).

Thus, to invoke the benefit of a new rule on collateral review, a petitioner must show that the rule "falls within one of the two narrow exceptions to the *Teague* doctrine." *O'Dell v. Netherland*, 521 U.S. 151, 156-57 (1997); *Beard v. Banks*, 542 U.S. 406, 416 (2004). These narrow exceptions are: (1) the rule is substantive or (2) the rule is a "watershed" rule of criminal procedure. *Whorton v. Bockting*, 549 U.S. 406, 416 (2007).

Johnson contends both exceptions apply to make *Miller* retroactive, but his arguments are unsound and the weight of authority is against him. *See, e.g.*, *Morgan*, 717 F.3d at 1189 (holding *Miller* announced a procedural rule that is not retroactive); *Craig*, 2013 U.S. App. LEXIS 431, *4-6 (not retroactive); *Martin v. Symmes*, 2013 U.S. Dist. LEXIS 147965, *58 (D. Minn. 2013) (not retroactive); *Ware v. King*, 2013 U.S. Dist. LEXIS 126782, *9, *approved by*, 2013 U.S. Dist. LEXIS 126781 (S.D. Miss. 2013) (not retroactive); *Kha v. Gipson*, 2013 U.S. Dist. LEXIS 95943, *2 (C.D. Cal. 2013) (not retroactive); *cf. Bell v. Uribe*, 729 F.3d 1052, 1064 (9th Cir. 2013) (noting "[i]t is not clear whether Miller may be applied retroactively on collateral review"). *Accord Chambers v. State*, 831 N.W.2d 311, 331 (Minn. 2013) (not retroactive); *State v. Tate*, 2013 La. LEXIS 2376, *41 (La. 2013)

25

(not retroactive); *People v. Carp*, 828 N.W.2d 685, 723 (Mich. App. 2012) (not retroactive); *Geter v. State*, 2012 Fla. App. LEXIS 16051, *27-28 (Fla. App. 2012) (not retroactive).[9]

"At bottom, . . . the *Teague* doctrine validates reasonable, good-faith interpretations of existing precedents made by state courts even though they are shown to be contrary to later decisions." *O'Dell*, 521 U.S. at 156 (internal quotations and citation omitted). "*Teague* asks state-court judges to judge reasonably, not presciently." *Id*. at 166.

> *1.    Miller is not substantive because it does not categorically bar a particular sentence*

The first, "limited exception" to the *Teague* rule is for new substantive rules. *O'Dell*, 521 U.S. at 157 (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330 (1989)); *Beard*, 542 U.S. at 416.

"A new rule is substantive when that rule places an entire class beyond the power of the government to impose a certain punishment regardless of the procedure followed, not when the rule expands the range of possible sentences." *Morgan*, 713 F.3d at 1368. Conversely, "rules that

---

[9] Johnson may not rely on state cases that found *Miller* retroactive. States are free to apply new procedural rules as a matter of *state* law, but those holdings do not bind this Court. Similarly, the federal criminal cases in which the Department of Justice "conceded" as a matter of policy that *Miller* is retroactive do not bind this Court. *See generally Morgan*, 717 F.3d at 1193. Virginia was not a party to those proceedings, and in any event, they do not implicate the comity concerns underpinning *Teague*. 489 U.S. at 310.

regulate only the *manner* of determining the defendant's culpability are procedural." *Summerlin*, 542 U.S. at 353 (emphasis added; internal citations omitted); *Morgan*, 717 F.3d at 1191 (rejecting "the misconception that, if a rule might have affected the sentence imposed upon a defendant, that rule must be substantive.").

The Supreme Court could not have made clearer the procedural nature of the rule it announced in *Miller*. "Our decision does *not* categorically bar a penalty for a class of offenders or type of crime—as, for example, we did in *Roper* or *Graham*. Instead, it mandates only that a sentencer follow a certain *process*—considering an offender's youth and attendant characteristics—before imposing a particular penalty." *Miller*, 132 S. Ct. at 2471 (emphasis added). The *Miller* rule is not substantive because it "neither decriminalize[s] a class of conduct nor prohibit[s] the imposition of [the challenged] punishment on a particular class of persons." *Graham v. Collins*, 506 U.S. 461, 477 (1993). "*Miller* does not implicate a substantive categorical guarantee because a juvenile offender may still be sentenced to life imprisonment without the possibility of parole after *Miller*." *Morgan*, 717 F.3d at 1191.

Johnson misreads *Atkins v. Virginia*, 536 U.S. 304 (2002), *Roper* and *Graham v. Florida*, to wrongly conclude that *Miller* announced a substantive

rule.  Those cases, which did announce substantive rules, actually underscore the *procedural* nature of the rule in *Miller*.   *Miller* itself expressly distinguished *Roper* and *Graham*, noting that the rules in those cases applied categorically while the newly announced rule did not.  132 S. Ct. at 2471.

*Atkins* categorically banned capital punishment of the mentally retarded.  536 U.S. at 321 ("the Constitution places a substantive restriction on the State's power to take the life of a mentally retarded offender") (citation and internal quotation omitted).  *Roper* categorically banned capital punishment of juvenile offenders.   543 U.S. at 578 ("The Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed.").  And *Graham* categorically banned imposing life without parole on juveniles who committed solely non-homicide offenses.  560 U.S. at 82 ("The Constitution prohibits the imposition of a life without parole sentence on a juvenile offender who did not commit homicide.").

The categorical nature of the rulings makes them substantive.  There is no procedure Virginia could adopt that would permit death sentences for juveniles or the mentally retarded.  Likewise, there is no procedure Virginia could fashion that would permit it to sentence a juvenile to life without parole solely for a non-homicide offense.   Because the bar applies

28

"regardless of the procedures followed," the rules in those cases are plainly substantive.  *Penry*, 492 U.S. at 329.

In contrast, *Miller* announced a rule that regulates the *manner* in which Virginia may sentence a juvenile to life without parole.  The Court held simply that "the Eighth Amendment forbids a sentencing scheme that *mandates* life in prison without possibility of parole for juvenile offenders."  *Miller*, 132 S. Ct. at 2469 (emphasis added).  The sentence itself was left intact.  What the Court invalidated was "the mandatory sentencing schemes" codified in the Alabama and Arkansas statutes.  *Id.*  It did "not categorically bar" the penalty.  *Id.* at 2471.  As such, *Miller* announced a procedural rule, not a substantive one.

Johnson's assertion to the contrary notwithstanding, *Alleyne* affords no support to his effort to raise the procedural rule to substantive status.  In *Alleyne*, the Court held "the essential Sixth Amendment inquiry is whether a fact is an element of the crime.  When a finding of fact alters the legally prescribed punishment so as to aggravate it, the fact necessarily forms a constituent part of a new offense and must be submitted to the jury."  133 S. Ct. at 2162.  The opinion did not hold it was retroactive.

What is more, all the circuits to have considered the question, including this one, have held that *Alleyne* does not apply retroactively to

29

cases on collateral review. *See, e.g.*, *Stewart*, 2013 U.S. App. LEXIS 19810, at *2; *United States v. Redd*, 735 F.3d 88, 91 (2d Cir. 2013); *In re Payne*, 733 F.3d 1027, 1029 (10th Cir. 2013); *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013). Thus, like the *Miller* rule, the *Alleyne* rule plainly is procedural.

*Summerlin* is instructive on this point. In *Summerlin*, the Court addressed the nonretroactivity of the new rule announced in *Ring v. Arizona*, 536 U.S. 584 (2002). *Summerlin*, 542 U.S. at 354-57. *Ring* had held the Sixth Amendment required that the jury decide whether an aggravating factor was present that was necessary to impose the death penalty. 536 U.S. at 603-09. Summerlin argued, similar to the argument Johnson advances here, that *Ring* was substantive and, therefore, retroactive to his case. 542 U.S. at 354. Applying *Teague*, the Supreme Court called *Ring* a procedural rule because it "did not alter the range of conduct Arizona law subjected to the death penalty." *Summerlin*, 542 U.S. at 354. "Instead, *Ring* altered the range of permissible *methods* for determining whether a defendant's conduct is punishable by death, requiring that a jury rather than a judge find the essential facts bearing on punishment." *Id.* (emphasis added).

The *Summerlin* analysis applies with equal force here. *Miller* stated expressly that it did "not foreclose a sentencer's ability to" impose life

without parole sentences on juveniles in homicide cases. 132 S. Ct. at 2469. It merely required the sentencer "to take into account *how* children are different, and *how* those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 2469 (emphasis added). Thus, as the Fifth Circuit has held, "*Miller* does not satisfy the test for retroactivity because it does not categorically bar all sentences of life imprisonment for juveniles; *Miller* bars only those sentences made mandatory by a sentencing scheme." *Craig*, 2013 U.S. App. LEXIS 431, at *4-5.

The Eleventh Circuit reached the same conclusion, noting "*Miller* did not prohibit the imposition of a sentence of life imprisonment without the possibility of parole on minors." *Morgan*, 713 F.3d at 1367-68; *see also United States v. Maldonado*, 2012 U.S. Dist. LEXIS 166589, *26 (S.D.N.Y. 2012) (noting a juvenile offender "may still be given a sentence of life imprisonment provided that such a sentence is imposed" consistent with *Miller*) (quoting *Miller*, 132 S. Ct. at 2468). *Accord Tate*, 2013 La. LEXIS 2376, at *1-2 ("*Miller* does not apply retroactively in cases on collateral review as it merely sets forth a new rule of criminal constitutional procedure, which is neither substantive nor implicative of the fundamental fairness and accuracy of criminal proceedings."); *Chambers*, 831 N.W.2d at 328 ("the rule announced in *Miller* does not eliminate the power of the State to impose

31

the punishment of life imprisonment without the possibility of release upon a juvenile offender who has committed a homicide offense.").

In sum, Johnson is serving a sentence ("imprisonment for life") that the law *may* impose, consistent with the Eighth Amendment. Because *Miller* expressly did not bar the sentence that Johnson now challenges, it did not announce a substantive rule. *Penry*, 492 U.S. at 329.

### 2.    *The procedural rule* in Miller *is not a "watershed rule"*

"The second, even more circumscribed, exception [to the *Teague* rule] permits retroactive application of watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *O'Dell*, 521 U.S. at 157 (citation omitted); *Beard*, 542 U.S. at 417. *Miller* did not announce such a rule.

"Since *Teague*, the Supreme Court has reviewed numerous claims that new rights fall within [the watershed rule] exception, and it has rejected every single one of them." *Mathur*, 685 F.3d at 399 (citing *Whorton*, 549 U.S. at 417-18 (collecting cases)). "That a new procedural rule is fundamental in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is seriously diminished. This class of rules is extremely narrow, and it is unlikely that any . . . ha[s] yet

32

to emerge." *Summerlin*, 542 U.S. at 352 (alterations in original; internal citations and quotations omitted).

To qualify as "watershed," "a new rule must itself constitute a previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding. In applying this requirement, we again have looked to the example of *Gideon*,[10] and 'we have not hesitated to hold that less sweeping and fundamental rules' do not qualify." *Whorton*, 549 U.S. at 421 (quoting *Beard*, 542 U.S. at 418). A watershed rule "cannot just be an important or even a fundamental right; it must be an important right in the specific service of enhancing the accuracy of the factfinding process." *Mathur*, 685 F.3d at 400 (citation and internal quotations omitted).

"The Supreme Court's decision in *Miller* is an outgrowth of the Court's prior decisions that pertain to individualized-sentencing determinations. The holding in *Miller* does not qualify as a 'watershed rule[] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding.'" *Craig*, 2013 U.S. App. LEXIS 431, *5-6 (quoting *Beard*, 542 U.S. at 417). *See also Howard v. United States*, 374 F.3d 1068, 1080 (11th Cir. 2004) (noting "the second *Teague* exception is so tight that very few new rules will ever squeeze through it.").

---

[10] *Gideon v. Wainwright*, 372 U.S. 335 (1963).

Given that *Miller* in no way addresses the accuracy of the underlying conviction, it does not satisfy the first test for a watershed rule. In addition, *Miller* does not alter our understanding of bedrock procedural elements. Rather, it simply mandates a procedure for one particular type of sentence. As such, *Miller* is significantly less sweeping than many other new rules the Supreme Court has held do not satisfy *Teague*'s second exception. *See Whorton*, 549 U.S. at 417-18 (collecting cases); *DeStefano v. Woods*, 392 U.S. 631 (1968) (*per curiam*) (refusing to give retroactive effect to *Duncan v. Louisiana*, 391 U.S. 145 (1968), which applied the Sixth Amendment's jury-trial guarantee to the States).

### III. JOHNSON'S SENTENCE IS PROPORTIONATE TO HIS OFFENSES

"The concept of proportionality is central to the Eighth Amendment." *Graham*, 560 U.S. at 59; *Atkins*, 536 U.S. at 311 n.7 (the Eighth Amendment prohibits "excessive punishments"). The goal is to ensure "the sentencer has treated the defendant as a uniquely individual human bein[g] and has made a reliable determination" regarding his sentence. *Penry*, 492 U.S. at 319 (citation and internal quotations omitted) (alteration in original); *Graham*, 560 U.S. at 59 (sentencer must consider the "human attributes" of the offender). It was because they posed too great a risk of a disproportionate

34

sentence that the Supreme Court invalidated the mandatory sentencing schemes for juveniles at issue in *Miller*. 132 S. Ct. at 2469, 2475.

Johnson, however, did not receive a disproportionate sentence. Although he has assiduously avoided acknowledging the facts of his case, Johnson had a hearing at which he presented to the sentencing jury all of the mitigation evidence that he could marshal. The Supreme Court of Virginia recited Johnson's mitigation evidence at length when it upheld his second death sentence, noting the powerful evidence in *aggravation*. *Johnson*, 591 S.E.2d at 52-55.

The mitigation evidence, by contrast, comprised testimony from family members concerning Johnson's turbulent family life; his mother's drug addiction and death from AIDS; his exposure to physical and sexual violence; and mental health testimony, including an explanation that Johnson had Dissociative Identity Disorder, with a "rage alter" personality. *See id.* After weighing all the evidence, the Supreme Court said,

> [t]he jury fixed Johnson's punishment at death, finding that there was a "probability that he would commit criminal acts of violence that would constitute a continuing serious threat to society." The jury also found that Johnson's "conduct in committing the offense is outrageously or wantonly vile, horrible or inhuman in that it involved torture[,] depravity of mind[,] [and] aggravated battery to the victim beyond the minimum necessary to accomplish the act of murder."

*Id.* at 55 (citations omitted).  Consistent with Virginia's two-step sentencing procedure,[11] the circuit court conducted a separate sentencing proceeding in which Johnson introduced mental health information and the court considered a pre-sentence investigation report (PSI).  *Id.*  Johnson was also offered the opportunity to address the court before sentence was imposed, but he declined.  *Id.*

> The circuit court sentenced Johnson to death in accordance with the jury verdict.  In explaining its ruling, the court stated:
>
>> Upon a mature consideration of all of the evidence, including the defendant's mitigating evidence, the violent nature of this crime, and the defendant's past record which includes five rapes within a seven month period, the Court finds no good cause to overturn the jury's verdict.

*Johnson*, 591 S.E.2d at 56 (alterations in original).   In reviewing the sentence for proportionality, the Supreme Court of Virginia also found:

> Johnson's age at the time he raped and murdered Hope Hall is only one factor that we consider in

---

[11] *See generally Vines v. Muncy*, 553 F.2d 342, 349 (4th Cir. 1977) ("under the Virginia practice, the punishment as fixed by the jury is not final or absolute, since its finding on the proper punishment is subject to suspension by the trial judge, in whole or in part, on the basis of any mitigating facts that the convicted defendant can marshal.").  Virginia judges can, and have, suspended life sentences.  *See, e.g.*, Va. Code § 19.2-303; *Harris v. Commonwealth*, 688 S.E.2d 279, 280 n.2 (Va. 2010) ("The court suspended all the sentences except for eight years of the life sentence for the abduction conviction."); *Moore v. Hinkle*, 527 S.E.2d 419, 422 (Va. 2000) ("The trial court confirmed the verdict and sentenced Moore to a term of life imprisonment, suspending all but ten years of the sentence.").

determining whether juries generally impose the death penalty for similar crimes. The record also shows that Johnson committed five rapes within a period of seven months, and that he stabbed one of these rape victims.

Johnson inflicted multiple stab wounds on Hope Hall in the course of murdering her. These numerous stab wounds inflicted on Hall are indicative of the vileness of the present murder and represent the culmination of a pattern of escalating violence over the course of Johnson's commission of the numerous rapes referenced above.

Juries in this Commonwealth generally, with some exceptions, have imposed the death sentence for convictions of capital murder based on findings of vileness and future dangerousness in which the underlying predicate offenses involved violent sexual crimes and the defendant had committed violent crimes on other occasions.

*Id.* at 61 (citations omitted).

Thus, the record conclusively demonstrates Johnson has already enjoyed the individualized sentencing hearing he seeks and that the jury imposed the harshest sentence legally available at that time. (App. 82-83). It follows, then, that his commuted sentence of "imprisonment for life" is not disproportionate to his "wantonly vile" conduct.

## CONCLUSION

Johnson's status as a recidivist rapist means there is no meaningful relief this Court can fashion for him on his challenge to his constitutionally

valid sentence for capital murder. Moreover, because *Miller* plainly announced a new procedural rule that the Supreme Court did not hold was retroactive, his petition was untimely. 28 U.S.C. § 2244(d)(1)(A). Accordingly, this Court should affirm the judgment of the district court.

## REQUEST FOR ORAL ARGUMENT

In compliance with Federal Rule of Appellate Procedure 34(a)(1), the respondent suggests oral argument in this case would aid the decisional process.

Respectfully submitted,

HENRY PONTON, WARDEN,
   *Appellee*,

_____/s/_____
Alice T. Armstrong
Virginia State Bar No. 45149
Senior Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
900 East Main Street
Richmond, VA  23219
(804) 786-2071
(804) 371-0151 (fax)

## CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND LENGTH LIMITATION PURSUANT TO RULE 32(A)

1.     This brief has been prepared using 14-point Times New Roman proportionally spaced type, with Microsoft Word software.

2.     Exclusive of the table of contents, table of authorities, and required certificates, the software indicates that this brief contains 8,518 words.

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word printout.


_____/s/_____
Alice T. Armstrong
Virginia State Bar No. 45149
Senior Assistant Attorney General

39

## CERTIFICATE OF SERVICE

On February 7, 2014, the required copies of this brief were filed with the Clerk of this Court and a copy was served on counsel of record via ECF notification:

_____/s/_____
Alice T. Armstrong
Virginia State Bar No. 45149
Senior Assistant Attorney General